903 P.2d 43

STATE of Hawai'i, Plaintiff–Appellee,

v.

Gary W. RABELLIZSA, Defendant–
Appellant.

No. 17371.

Supreme Court of Hawai'i.

Sept. 1, 1995.

As Amended Sept. 11, 1995.

Neal J. Kugiya, on the briefs, Honolulu,
for defendant-appellant.

Caroline M. Mee, Deputy Prosecuting
Atty., on the briefs, Honolulu, for plaintiff-
appellee.

Before MOON, C.J., and KLEIN,
LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Gary Rabellizsa (Appellant) was found guilty of murder in the second degree and appeals from the judgment of the circuit court. On appeal, Appellant contends that the circuit court erred by: (1) precluding Appellant from introducing evidence that a third person had a motive to kill the victim; and (2) denying Appellant's motion for judgment of acquittal. For the reasons set forth below, we disagree and affirm.

## I. BACKGROUND

On July 16, 1992, Joe Gouveia went to the victim's home to socialize and drink a few beers. At one point during the evening, the victim got up to water his plants while Gouveia went to the victim's van to fetch a couple more beers. When Gouveia reached the van, he heard the victim raise his voice to an unknown third party and say, "What, you guys like trouble?" and "What, you going to shoot me?" Gouveia then heard the sound of gunfire. He ran over to help the victim who lay crumpled on the ground. Gouveia looked up and saw a black "fastback" car, later identified as Appellant's, drive away. Gouveia turned his attention to the victim who uttered, "Joe, Rabellizsa. I gonna die." The victim was taken to the hospital and later died from the gunshot wound.

On August 4, 1992, Appellant was charged with murder in the second degree in violation of Hawai'i Revised Statutes (HRS) § 707–701.5 (Supp.1992).[1]

On June 9, 1993, at a pre-trial motions hearing, the prosecution moved in limine to exclude all evidence of prior bad acts of the victim. Of relevance to this appeal, the prosecution moved to preclude Appellant from eliciting testimony of Mark Paishon (Paishon) that the victim allegedly threatened and ran him off the road while driving a car. Appellant opposed the prosecution's motion and argued that because the prosecution was intending to raise at trial the issue of Appellant's motive to murder the victim, that Appellant was entitled to counter the prosecution's argument with evidence of Paishon's motive to murder the victim. The court ruled that

> [a]s to the [victim] running [Mark Paishon] off [the road], in that regard I'll reserve my ruling on that and rule during trial. And my ruling will be dependent upon the foundation that is laid prior to any questions being asked regarding that incident. But as such, counsel is precluded from mentioning during opening statements or voir dire or at any time any mention of this previous act between Mark Paishon and [the victim].... If it comes in during trial [Appellant will] have the opportunity during closing to make full reference. As to the threat, I think I have already ruled on that. Depending again on how the evidence is elicited in this case and how it develops I may reverse my ruling and let it in. But at this point in time I am denying [Appellant's] request to let [the threat] in.

Trial commenced on June 14, 1993. The prosecution called Paishon as a witness. Paishon testified that two days prior to the victim's death, the victim was driving his van and speeding down the residential street where Paishon and Appellant's mother lived. Paishon explained that both his girlfriend and Appellant's mother were upset that the victim had nearly hit some children playing near the street. Paishon stated that the following day, the victim again drove his van in Paishon's neighborhood and almost ran over some children. Paishon testified that, as the victim placed his van in reverse, the victim made some "despairing [sic] statements about the Rabellizsas." Paishon testified that the victim was "screaming, yelling, mostly talking" at him because Paishon had told the victim not to speed on the road because "a lot of kids [were] there."

On cross-examination, Appellant twice asked Paishon if the victim had threatened him. The prosecution objected to the posed questions and claimed that threats made by the victim to Paishon were irrelevant. The court sustained the prosecution's objections. Paishon testified that he did not know of any problems between the victim and Appellant.

1. HRS 707–701.5 provides in pertinent part that "a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

Paishon explained that he did not know Appellant. Appellant asked Paishon if he "had any discussions with any of the Rabellizsa family about going over and shooting" the victim, to which he immediately responded, "No, ridiculous." Appellant then asked Paishon if he was "involved in the shooting of" the victim. Paishon responded, "Hell no.... Never, I had nothing to do with it." Finally, Appellant asked, "To your knowledge, was the Rabellizsa family and Appellant, in particular, involved in the shooting of [the victim]?" Paishon testified, "Not that I know of. Nothing. I was shocked to know that he was shot[.]"

Mark Furtado testified that on July 16, 1992, prior to the shooting, he went over to the victim's home. After he arrived at the victim's home, he stood near the victim's van when he noticed a dark-colored car park behind the van. Furtado later identified Appellant's car as the vehicle parked behind the van. He testified that he was unable to get a good look at the car's occupant because the windows were tinted.

Venus Gaco and Leanne Aken both were neighbors of the victim. They each testified that on July 16, 1992, at approximately 7:00 p.m., they heard a noise that sounded like a car backfiring, and then saw a black car drive away.

Gloria Westlake testified that on July 16, 1992, she was walking towards the victim's home, when she heard the victim say something like, "Why you wanna make trouble?" Then she heard a noise that sounded like a firecracker and saw a black car speed away. She later identified Appellant's vehicle as the car that sped away.

Audrey Bush testified that on July 16, 1992, at approximately 7:00 to 7:15 p.m., she was walking near the victim's home when she saw a "shiny black car" speed through an intersection, run a stop sign, and come to a "screeching halt." Because the neighborhood had been having problems with speeding cars, she wrote down the vehicle's license plate number. She later identified Appellant's vehicle, bearing the same license plate number as the one she wrote down, as the one that she saw on July 16, 1992.

Michael Boles testified that he and Appellant lived in the same neighborhood and that they had been friends for approximately ten years. Boles testified that on July 16, 1992, at approximately 7:00 p.m., he saw a bunch of people gather around Appellant's car. He then saw Appellant walk away from his car towards his mother's home, holding an automatic rifle in his hand. Boles testified that he saw Appellant go inside his mother's home with the gun and then walk outside the house without the gun.

The parties stipulated that Appellant and his wife owned a 1982 black, Nissan 300ZX, with the same license plate number that Audrey Bush identified.

At the conclusion of the prosecution's case in chief, Appellant moved for a judgment of acquittal. The court denied the motion and stated that "at this time taking the evidence in the light most favorable to the state, the court will find that a reasonable person could find based upon the state's evidence that the defendant is guilty of the charge that he's being charged with." The jury found Appellant guilty of murder in the second degree, and he was subsequently sentenced to serve a term of life imprisonment with the possibility of parole. This appeal followed.

## II. DISCUSSION

### A. Motive of a third person

Appellant contends that the court erred in denying him the opportunity to elicit testimony that the victim threatened Paishon. He argues that this evidence was relevant to show that Paishon had a greater motive than Appellant to kill the victim. We disagree.

The standard on appeal for review of evidentiary rulings depends on the particular rule of evidence at issue. *Kealoha v. County of [Hawai'i]*, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993). Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits only one correct result, in which case, review is under a right/wrong standard. *Id.* In reviewing whether evidence is relevant pursuant to Hawai'i

Rules of Evidence (HRE) Rules 401 and 402,[2] we apply the right/wrong standard. *Id.*

■ In a case of first impression, we address the trial court's decision to disallow evidence of a third person's motive to commit the crime for which the defendant was charged. Generally, motive alone is not sufficient to establish relevance;. rather, there must be a "nexus between the proffered evidence and the charged crime." *Winfield v. United States,* 652 A.2d 608, 613 (D.C.App. 1994).

As stated in *People v. Green,* 27 Cal.3d 1, 22, 164 Cal.Rptr. 1, 13, 609 P.2d 468, 480 (1980):

> It is settled ... that evidence that a third person had a motive to commit the crime with which the defendant is charged is inadmissible if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense.... The rule is designed to place reasonable limits on the trial of collateral issues ... and to avoid undue prejudice to the People from unsupported jury speculation as to the guilt of other suspects....

(Citations omitted.) Following *Green,* the California Supreme Court held that

> third party evidence need not show 'substantial proof of a probability' that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt.... [Put differently,] there must be direct or circumstantial evidence *linking the third person to the actual perpetration of the crime.*

*People v. Hall,* 41 Cal.3d 826, 833, 226 Cal. Rptr. 112, 116, 718 P.2d 99, 104 (1986) (emphasis added).

Similarly, the District of Columbia requires that the evidence must clearly link the third person to the commission of the crime. In *Winfield, supra,* the court stated:

> Before evidence that there is a reasonable probability that someone else committed the charged offense can be deemed relevant, and thereby admissible, the evidence must "clearly link" the other person to the commission of the crime.... What we mean by "clearly link" ... is proof of facts or circumstances which tend to indicate some reasonable possibility that a person other that the defendant committed the charged offense. This proof permits the admission of evidence which otherwise is generally excluded because it is too remote in time and place, completely unrelated or irrelevant to the offense charged, or too speculative with respect to the third party's guilt.

*Winfield,* 652 A.2d at 612 (citations omitted). *See also Spence v. State,* 795 S.W.2d 743, 754–55 (Tex.Cr.App.1990) (holding "that an accused may not bring in evidence that a third person may have had a motive to commit the crime with which the accused is charged [unless] the accused can link the third person to the crime.")

In *State v. Denny,* 120 Wis.2d 614, 357 N.W.2d 12 (Ct.App.1984), the Wisconsin Court of Appeals adopted a "legitimate tendency" test requiring that, in order to admit evidence regarding a third person's motive to commit the crime, "there must be a 'legitimate tendency' that the third person could have committed the crime." *Id.* at 623, 357 N.W.2d at 17. The *Denny* court held that "as long as motive and opportunity have been shown and as long as there is also some evidence to directly connect a third person to the crime charged which is not remote in time, place or circumstances, the evidence should be admissible." *Id.* at 624, 357 N.W.2d at 17. *See also State v. Umfrees,* 433 S.W.2d 284 (Mo.1968) ("Evidence of disconnected or remote acts is not admissible for [the purpose of showing a third person's motive to commit the crime for which the

---

**2.** HRE Rule 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

HRE Rule 402 provides that "[a]lll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of [Hawai'i], by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

defendant is charged], nor is evidence which serves only to cast bare suspicions or raise conjectural inferences of another's guilt.")

■ We are persuaded that the "legitimate tendency" test comports with the relevancy test set forth in HRE Rule 401, instructing that "relevant evidence means evidence having any *tendency* to make the existence of any fact . . . more or less probable." (Emphasis added.)

■ It is clear that there must be some evidence linking the third person to the crime in order to admit evidence of the third person's motive.[3] In the present case, other than the evidence of a possible motive, the record is bereft of any evidence linking Paishon to the crime. In effect, Appellant seeks to introduce motive evidence in a vacuum. In applying the "legitimate tendency" test, we hold that, because there was no evidence otherwise linking Paishon to the crime, the trial court properly precluded Appellant from eliciting testimony that Paishon may have had a motive to kill the victim. Evidence that a third person had a motive to commit the crime, absent any evidence that links the third person to the commission of the crime, is irrelevant and collateral in nature.[4]

### B. *Motion to acquit*

■ Appellant contends that the trial court erred in refusing to grant his motion for a judgment of acquittal. In reviewing the sufficiency of evidence to support a conviction, this court has repeatedly stated that

evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was be-

fore a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992)). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *Batson,* 73 Haw. at 248–49, 831 P.2d at 931 (citation omitted).

Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a) (1981) provides in pertinent part that

[t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Additionally,

The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

*Pone,* 78 Hawai'i at 265, 892 P.2d at 457–58 (citation omitted) (brackets in original); *see also State v. Rocker,* 52 Haw. 336, 346, 475 P.2d 684, 690 (1970) ("This court will not disturb the ruling of a [trial] court if the

---

**3.** We note that in *Erwin v. State,* 729 S.W.2d 709 (Tex.Cr.App.1987), the Texas appellate court acknowledged that evidence of a third party's guilt is generally not admissible. However, the court found an exception when *evidence of a third person's guilt* is offered by the defendant and the third person in question is a state's witness; the evidence is admissible if the guilt of the third person is inconsistent with the testimony regarding the defendant's guilt. *Id.* at 716.

We agree with *Erwin* that if the defendant adduces evidence of the guilt of a state's witness

and the evidence is inconsistent with the evidence of the defendant's guilt, then the evidence is admissible. Reciprocally, if the defendant does not provide evidence of the third person's guilt, then the defendant cannot introduce evidence of the third person's motive.

**4.** Notwithstanding its irrelevance, Paishon testified that he had nothing to do with the killing of the victim.

evidence of the prosecution is such that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." (Internal citations and quotation marks omitted.)).

In viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable juror could have determined that Appellant was guilty of murder in the second degree. We therefore hold that there is substantial evidence to support the verdict and, therefore, that the trial court did not err in denying Appellant's motion for a judgment of acquittal.

## III. *CONCLUSION*

For the foregoing reasons, we hold that the trial court did not err by: (1) precluding Appellant from introducing evidence that Paishon had a motive to kill the victim; and (2) denying Appellant's motion for a judgment of acquittal.

Affirmed.