**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 31, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| Appeal No. | **2018AP1674** | Cir. Ct. No. **2011CF544** |
|---|---|---|
| **STATE OF WISCONSIN** | | **IN COURT OF APPEALS**<br>**DISTRICT III** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

RANDAL G. ROSENTHAL, JR.,

    DEFENDANT-APPELLANT.

        APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Randal Rosenthal, Jr., pro se, appeals an order denying his WIS. STAT. § 974.06 (2019-20)[1] motion for postconviction relief. Rosenthal argues that he is entitled to a new trial on four grounds: (1) newly discovered evidence; (2) the denial of the right to counsel at a critical stage of his case; (3) prosecutorial misconduct; and (4) the ineffective assistance of both his trial and postconviction counsel. For the reasons discussed below, we reject Rosenthal's arguments and affirm the order.

## BACKGROUND

¶2 In August 2011, the State charged Rosenthal with first-degree intentional homicide, arising from allegations that Rosenthal shot his mother, Kathleen Remter, in the back of the head. Remter's body was found floating in the Fox River, near the Rapid Croche Dam. At trial, witnesses placed Rosenthal's car in the parking lot near the scene of the homicide. Rosenthal admitted he was fishing with his mother on the day of her death. A bloodstain on Rosenthal's jeans contained his mother's DNA. Further, Rosenthal was the beneficiary of a $500,000 accidental death policy on his mother's life, as well as a life insurance policy worth approximately $86,000 as part of her employee benefits package.

¶3 The doctor who performed the autopsy opined that Remter was killed by a bullet that came from a 9mm, .357 caliber, or .32 caliber firearm. Rosenthal's neighbor testified that Rosenthal, who lived in Brillion, showed him a 9mm gun earlier on the day of the shooting, and a 9mm Beretta was found eight months later under a bush in a ditch near Brillion. One of Rosenthal's fellow jail

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

inmates, Justin Douglas, testified that Rosenthal told him he shot his mother on the river's edge and threw her body in the river, hoping the current would drag her body for a few days, giving him an opportunity to plan his story and remove any evidence. According to Douglas, Rosenthal offered to pay Douglas, who was planning to get out of jail soon, to dispose of the murder weapon. Douglas provided this information to law enforcement in exchange for a more favorable plea offer in his pending cases. A police officer confirmed that Douglas provided information about the case that was not in the public record.

¶4  A jury found Rosenthal guilty of the crime charged, and the circuit court imposed a life sentence but declared Rosenthal eligible for extended supervision release beginning on July 23, 2061. In his direct appeal, Rosenthal argued that the *Denny* rule[2] was unconstitutional, both generally and as applied to him. Specifically, Rosenthal asserted that the circuit court erred by preventing him from admitting evidence that Remter's boyfriend was a third-party suspect who could have committed the murder. This court rejected Rosenthal's arguments and affirmed the judgment. *See State v. Rosenthal*, No. 2013AP1847-CR, unpublished slip op. (WI App June 17, 2014).

¶5  Rosenthal subsequently filed the underlying WIS. STAT. § 974.06 motion for a new trial, asserting the following nine claims: (1) newly discovered evidence consisting of two letters from Douglas; (2) the denial of his right to counsel at a critical stage of the proceedings; (3) prosecutorial misconduct by

---

[2] Under *Denny*'s "legitimate tendency" test, a defendant seeking to implicate a third-party suspect must show the third-party's motive, opportunity, and "some evidence to directly connect a third person to the crime charged which is not remote in time, place or circumstances." *State v. Denny*, 120 Wis. 2d 614, 624, 357 N.W.2d 12 (Ct. App. 1984).

referencing facts not in evidence during closing arguments; (4) ineffective assistance of his trial counsel for failing to object to the prosecutor's closing arguments; (5) ineffective assistance of trial counsel for not moving to strike a potentially biased juror; (6) ineffective assistance of trial counsel for failing to gather testimony and evidence purportedly beneficial to his defense; (7) ineffective assistance of his postconviction counsel for failing to discuss potential appellate claims with Rosenthal; (8) ineffective assistance of postconviction counsel for failing to obtain and investigate "numerous issues for appeal" purportedly contained in a letter prepared by trial counsel; and (9) ineffective assistance of postconviction counsel for failing to argue that trial counsel was ineffective for failing to retain an expert witness to rebut the State's DNA and blood-spatter evidence.

¶6     Attached to the motion were several exhibits, including two letters purportedly sent by Douglas after Rosenthal's conviction.  In the first letter, addressed to Rosenthal, Douglas stated, "[I]t's time to right my wrong," and he asked Rosenthal to arrange for a meeting between Douglas and both Rosenthal's sister and his wife.  Douglas stated he would not discuss the matters by phone or in letters and added that he was "never getting out now."  In the second letter, addressed to Rosenthal's sister, Tonya Borseth, Douglas stated: "First of all I'd like to say that I'm very sorry that your brother's where he's at and together I hope that we're able to change this because he doesn't belong in there."  Douglas asked to speak with Borseth first to explain himself, and he volunteered to speak with Rosenthal's attorney thereafter "to get things onto the record so, that we can begin this long process of helping your brother out."  The letter added that Douglas had "done alot [sic] of stupid things in life" and he "made a vow to right all of [his] past wrongs."  Douglas stated he would send Borseth visitation forms so she and

Rosenthal's attorney could be added to Douglas's visitors' list to "get this all cleared up."

¶7 The circuit court appointed counsel to represent Rosenthal with respect to his WIS. STAT. § 974.06 motion. Based on a discussion with defense counsel indicating that Rosenthal only wished to proceed on his newly discovered evidence claim, the State informed the court that it would not respond to any of the other claims advanced by Rosenthal in his § 974.06 motion. At a motion hearing, Douglas stated he would not testify. Rosenthal testified that he believed the letter written to him would impact a future trial, although he admitted the letter did not actually say anything about Rosenthal's original trial, nor could Rosenthal confirm that Douglas actually wrote the letter. Borseth similarly testified that she received a letter from Douglas that she interpreted as an expression of regret about something he did.

¶8 During the hearing, defense counsel reminded the circuit court that counsel was not going to make any arguments related to the remaining claims in Rosenthal's motion. According to counsel, Rosenthal wanted the court "to take those under advisement and perhaps rule on those." The court denied the motion in its entirety, and this appeal follows.

## DISCUSSION

¶9 On appeal, Rosenthal argues that the circuit court erred by concluding that Douglas's letters did not warrant a new trial. To obtain a new trial based on newly discovered evidence, a defendant must prove: "(1) the evidence was discovered after [his or her] conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *State v. Plude*, 2008 WI 58, ¶32, 310

Wis. 2d 28, 750 N.W.2d 42 (citation omitted). Additionally, "[a] claim of newly discovered evidence that is based on recantation also requires corroboration of the recantation with additional newly discovered evidence." *State v. McAlister*, 2018 WI 34, ¶33, 380 Wis. 2d 684, 911 N.W.2d 77. The corroboration requirement is met if "(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation." *Id.*

¶10 If the defendant makes the requisite showings, then the circuit court must determine "whether a reasonable probability exists that had the jury heard the newly discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Plude*, 310 Wis. 2d 28, ¶¶31-32. Whether there is a reasonable probability that a new trial would produce a different result is a question of law that we review independently. *Id.*, ¶33. The decision to grant or deny a motion for a new trial based on newly discovered evidence, however, is committed to the circuit court's discretion. *Id.*, ¶31.

¶11 The State concedes that Rosenthal has likely satisfied the first two criteria for newly discovered evidence—i.e., the letters were sent and, therefore, discovered after Rosenthal's conviction, and Rosenthal does not appear to have been negligent in seeking out information that Douglas purportedly withheld. With respect to the third criterion, Rosenthal argues that because Douglas was the only witness who testified that Rosenthal admitted to the crime, letters suggesting that he might recant his testimony were material to the case and to his credibility. Rosenthal claims the fourth criterion is met because the letters were not cumulative to other evidence. We are not persuaded.

¶12 The letters do not reference the trial or Douglas's testimony. Therefore, as the circuit court recognized, the evidence was speculative, leaving

the court to guess about the purpose of the letters and their meaning. Although the letters suggest that Douglas felt remorse for Rosenthal's conviction, the letters do not state that Douglas testified falsely or otherwise intended to recant his testimony. Further, without knowing the meaning behind the letters, the court could not determine if they would be cumulative to other trial evidence or otherwise material to the case.

¶13 Even assuming the letters could be broadly interpreted as a recantation, Rosenthal failed to show any corroboration of this purported recantation. Instead, he argues, for the first time on appeal, that the State and his appointed counsel should have investigated the letters and their meaning. However, the burden was on Rosenthal, not the State, to prove that the letters constituted newly discovered evidence. *See Plude*, 310 Wis. 2d 28, ¶32.

¶14 To the extent Rosenthal intimates that counsel appointed for the WIS. STAT. § 974.06 proceedings was ineffective by failing to investigate the letters, his argument fails. Rosenthal's motion for postconviction relief pursuant to § 974.06 is not a direct appeal from a conviction. Rather, a § 974.06 proceeding is considered to be civil in nature, and it authorizes a collateral attack on a defendant's conviction. *See* § 974.06(6). "Defendants do not have a constitutional right to counsel when mounting collateral attacks upon their convictions." *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 649, 579 N.W.2d 698 (1998). An ineffective assistance of counsel claim is premised upon the right to counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). It follows that there is no right to effective assistance of counsel in a collateral attack context. In other words, Rosenthal cannot argue that he was deprived of the effective assistance of an attorney when he had no constitutional right to that assistance in the first place. Moreover, we need not address arguments raised for

the first time on appeal. *See State v. Huebner*, 2000 WI 59, ¶¶10-12, 235 Wis. 2d 486, 611 N.W.2d 727. Because Rosenthal failed to establish that the letters satisfied the criteria for newly discovered evidence, the circuit court properly denied that portion of the motion.

¶15 Turning to the eight other arguments raised in Rosenthal's WIS. STAT. § 974.06 motion, Rosenthal alleged six claims of ineffective assistance of either his trial or postconviction/appellate counsel. Additionally, Rosenthal alleged prosecutorial misconduct during closing arguments and, based on his assertion that Douglas was acting as a government agent, Rosenthal argued that he was denied the right to counsel during his conversations with Douglas. Because Rosenthal has not established that the latter two claims were raised and, therefore, preserved by trial counsel, we conclude all eight claims must be examined under the rubric of ineffective assistance of counsel.

¶16 It is a prerequisite to a claim of ineffective assistance of counsel to preserve counsel's testimony at a hearing. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). By failing to call his attorneys to testify at the motion hearing, Rosenthal forfeited any claim of ineffective assistance of counsel. *See State v. Mosley*, 201 Wis. 2d 36, 50, 547 N.W.2d 806 (Ct. App. 1996). To the extent Rosenthal faults the circuit court for failing to order a *Machner* hearing, the court placed no limitations on which witnesses Rosenthal could call to testify at his postconviction motion hearing.

¶17 Even if we were to ignore the forfeiture of Rosenthal's remaining claims, we would conclude that these claims are procedurally barred. WISCONSIN STAT. § 974.06(4) requires defendants "to consolidate all their postconviction claims into one motion or appeal." *State v. Escalona-Naranjo*, 185 Wis. 2d 168,

178, 517 N.W.2d 157 (1994). Successive motions and appeals are procedurally barred unless the defendant can show a sufficient reason as to why the newly alleged errors were not previously raised. *Id.* at 185. We determine the sufficiency of a defendant's reason for circumventing *Escalona-Naranjo*'s procedural bar by examining the "four corners" of the subject postconviction motion. *See State v. Allen*, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433.

¶18    "In some instances, ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal." *State v. Romero-Georgana*, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. To establish ineffective assistance of counsel, Rosenthal must show that his counsel's performance was deficient and that he suffered prejudice as a result of that deficiency. *See Strickland*, 466 U.S. at 687. Further, when challenging postconviction counsel's selection of issues on appeal, a defendant must prove that the claims he or she now seeks to raise are clearly stronger than the claims raised by postconviction counsel. *Romero-Georgana*, 360 Wis. 2d 522, ¶¶45-46.

¶19    Rosenthal contends that his postconviction counsel performed deficiently by failing to discuss all possible bases for appeal before pursuing Rosenthal's direct appeal. However, Rosenthal's WIS. STAT. § 974.06 motion did not explain how his new claims are clearly stronger than the arguments that were made in his direct appeal. Based on Rosenthal's failure to draw these mandatory comparisons, *see Romero-Georgana*, 360 Wis. 2d 522, ¶6, the circuit court properly denied his remaining claims.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.