COURT OF APPEALS
DECISION
DATED AND FILED

May 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1570**

STATE OF WISCONSIN

Cir. Ct. No. 2012CF1134

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ALPHONSO LAMONT WILLIS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER and JEAN M. KIES, Judges. *Affirmed*.

Before Donald, P.J., Geenen, and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Alphonso Lamont Willis appeals from a judgment entered following a jury trial and an order of the circuit court denying his WIS. STAT. § 974.06 (2023-24) postconviction motion.[1]   On appeal, Willis argues that his postconviction counsel should have alleged that his trial counsel was ineffective for failing to present a ***Denny*** third-party perpetrator defense at trial.[2] For the reasons discussed below, we reject Willis's arguments and affirm.

## BACKGROUND

¶2     On March 2, 2012, Susan Hassel was shot and killed in her apartment.  Willis was charged and convicted following a jury trial of one count of first-degree intentional homicide using a dangerous weapon, as a party to a crime, and one count of felon in possession of a firearm.

¶3     This marks the third time that this case has appeared before us.  *See* ***State v. Willis*** (***Willis I***), No. 2016AP791-CR, unpublished slip op. (WI App July 18, 2017); ***State v. Willis*** (***Willis II***), No. 2018AP494-CR, unpublished slip op. (WI App Oct. 6, 2020).  In ***Willis I*** and ***Willis II***, this court provided detailed summaries of the facts of this case.  In pertinent part:

> At [Willis's] trial, the State introduced evidence from three citizen witnesses.  Earnest Jackson, Willis's nephew, testified that he was in Hassel's apartment with Willis when Willis shot the woman.  Jackson said that afterward, he and Willis walked to a nearby home, where a woman was shoveling snow in her back yard.  Jackson said Willis spoke with the woman and then he and Willis walked away.

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  *See* ***State v. Denny***, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).

> The woman who was shoveling snow, Trina Jagiello, testified that she spoke with Willis, who was already familiar to her "by face." Jagiello said Willis was with another man she did not know. Jagiello said Willis told her he was looking for Larry Durrah, who lived in the house with Jagiello. Jagiello said Willis waited on the porch for "five or six minutes" and then walked away after telling Jagiello to tell Durrah that Willis had stopped by.
>
> ….
>
> The third citizen witness, Steven Williams, testified that he was with Hassel in her apartment until about 6:00 p.m., at which time he went across the hall to his cousin's apartment and spent time with family members. Later, Williams heard a gunshot. Williams said he opened his apartment door and saw Willis—who Williams knew was a friend of Williams's nephew—and "another guy" exiting Hassel's apartment. Williams said Willis "had his head down" and "was trying to hide" a gun that had "smoke coming out of" the gun barrel. Williams said the two men left the building.

*Willis II*, No. 2018AP494-CR, ¶¶2-3, 5. In addition, the State introduced evidence that an officer responding to the scene located two separate sets of footprints (one made by shoes, the other made by boots) in the freshly-fallen snow on the side of Hassel's apartment building that led to the front of Jagiello's house. *Id.*, ¶7.[3] The State argued that one set of the footprints matched the boots Willis was wearing when he was arrested. *Id.*, ¶9.

¶4      After Willis's conviction, Willis's postconviction counsel filed a motion raising numerous grounds for relief, including that trial counsel was ineffective when he failed to present evidence of Hassel's time of death. Postconviction counsel also filed a supplemental motion, which included an argument that trial counsel was ineffective when he failed to present expert

---

[3] We note that the boot print stopped at the front of Jagiello's house and the shoe print continued down the block.

testimony that the footprints in the snow did not match the boots that Willis was wearing when he was arrested or seek to exclude the evidence of Willis's boots. The circuit court denied both motions without a hearing and Willis appealed.

¶5      In *Willis I*, this court remanded the case for an evidentiary hearing on whether trial counsel was ineffective with respect to the failure to (1) obtain a witness to rebut the State's boot print evidence, and (2) introduce evidence regarding the time of Hassel's death. *Id.*, No. 2016AP791-CR, ¶3.

¶6      Relevant to this appeal, during the evidentiary hearing, trial counsel testified that his initial strategy was to establish that Durrah, not Willis, committed the homicide. However, trial counsel testified that he was unable to locate Durrah and his request for an adjournment to try to find Durrah was not granted.[4] Additionally, according to trial counsel, Willis confessed to a defense investigator, and then directly to trial counsel, that he shot Hassel, which prevented trial counsel from calling Willis as a witness.[5]

¶7      After the hearing, the circuit court again denied the postconviction motion and Willis appealed. After the initial brief and the response brief were filed, Willis's counsel filed a motion seeking a remand for a supplemental hearing to address whether trial counsel had provided ineffective assistance of counsel for failing to introduce Durrah as an alternative suspect. This court denied the motion. Willis then sought to dismiss the appeal and reinstate his deadline to file a

---

[4] We observe, however, on the first day of the trial, trial counsel represented to the circuit court that "the State has Mr. Larry Durrah here on a material witness hold."

[5] Although Willis confessed, trial counsel also testified that he did not believe the confession.

postconviction motion, which this court also denied due to the late stage of the appeal. After the completion of briefing, this court affirmed Willis's conviction. *Willis II*, No. 2018AP494-CR, ¶1. This court concluded that trial counsel did not perform deficiently in regards to rebutting the State's footprint evidence. *Id.*, ¶21. Additionally, this court held that Willis was not prejudiced by trial counsel's failure to introduce evidence relating to the time of Hassel's death. *Id.*, ¶¶22, 26.

¶8     In 2022, Willis filed the WIS. STAT. § 974.06 motion underlying this appeal.[6] Willis alleged ineffective assistance of trial counsel and postconviction counsel. Willis asserted that postconviction counsel should have argued that trial counsel was ineffective for failing to present a ***Denny*** defense at trial. In his motion, Willis alleged that Durrah committed the homicide because:

- Durrah was arrested at the crime scene wearing footwear similar to the impression in the snow;

- During his first interrogation, Durrah told police he had been at his Uncle Steven Williams'[s] apartment the night in question and gave officers a phone number that was found in Hassel's contacts. Durrah did not tell officers that he sold Hassel drugs the night of her death.

- Durrah told officers he drove from Hassel's apartment building to his house right around the time of Hassel's death;

- During his second interrogation, Durrah admitted he was one of Hassel's long-term drug suppliers, he gave Hassel cocaine on credit the night of her death, and that she paid him $80 for $100 dollars' worth of cocaine. He told officers that he normally walks to his uncle's apartment.

---

[6] The Honorable Jeffrey A. Wagner presided over the trial and the postconviction proceedings during Willis's direct appeal. The Honorable Jean M. Kies presided over the evidentiary hearing and issued the decision underlying this WIS. STAT. § 974.06 appeal.

- During his third interrogation, Durrah admitted he had recently confronted Hassel over her reneging on a drug purchase and for owing him money, ostensibly for cigarettes.

- Durrah's fingerprints were found on a beer can inside Hassel's apartment.[7]

- Durrah lived at the same house as Jagiello, which was where one set of footwear impressions stopped.

- Durrah has a criminal record that includes strong-arm robbery, armed robbery, and a long-term involvement in the drug trade.

To support these allegations, Willis attached three Milwaukee Police Department reports.

¶9      The circuit court held an evidentiary hearing on the motion. Both postconviction counsel and trial counsel testified. Postconviction counsel testified that when he filed the postconviction motion, he "missed" the *Denny* issue. Trial counsel testified that it was his theory, based on information from Willis, that Durrah killed Hassel because she was a snitch. Trial counsel testified that he abandoned any plan to pursue a *Denny* defense once Willis made his confession. Trial counsel explained that without Willis's testimony, he would be unable to meet *Denny*'s motive requirement. Trial counsel also testified that he lied when he requested an adjournment to investigate a *Denny* defense, when he really needed time to develop a better defense theory.

---

[7] Willis's motion and his initial brief in this court refer to both "fingerprint" and "fingerprints." At trial, the parties stipulated that there were fifteen latent print impressions recovered from items in Hassel's apartment. Out of those impressions, one was recovered from a beer can and was identified as the left middle finger of Durrah and the remaining impressions were of insufficient quality for identification.

6

¶10 After briefing, the circuit court denied the motion without a hearing in a thirty-one page decision. The court found that trial counsel's testimony was incredible and trial counsel's failure to pursue a third-party defense was unreasonable. The court, however, found that Willis was not prejudiced given the evidence presented against Willis at the trial. Thus, the court found that postconviction counsel "was not ineffective in failing to allege what ultimately is not a clearly stronger argument." Willis now appeals.[8]

## DISCUSSION

¶11 On appeal, Willis renews his argument that he was deprived of effective assistance of counsel when his postconviction counsel failed to raise a claim that trial counsel was ineffective for failing to present a ***Denny*** third-party perpetrator defense.

¶12 When a defendant, like Willis, seeks relief following a prior postconviction motion and appeal, a WIS. STAT. § 974.06 motion must establish a "sufficient reason" for failing to raise any issues that could have been raised in the earlier proceedings. ***State v. Escalona-Naranjo***, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994). In the absence of a sufficient reason, a claim that could have been raised earlier is procedurally barred. *See **id.*** at 186. In some circumstances, a claim of ineffective assistance of postconviction counsel may constitute a

---

[8] Before the initial brief in this appeal was filed, Willis sought a remand to allow him to present his testimony that "although he did tell [trial counsel's] investigator that he committed the homicide, he only did so because the investigator was discussing the strategy of offering Mr. Willis's nephew as an alternative suspect, and Mr. Willis did not want to pursue that strategy." Further, the motion for remand alleged that Willis would testify that prior to trial, he retracted his confession and told trial counsel he lied when he said he shot Hassel. This court denied the motion.

sufficient reason for an additional motion. *See State v. Romero-Georgana*, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668.

¶13    When an ineffective assistance of postconviction counsel claim is premised on the failure to raise the ineffective assistance of trial counsel, the defendant must first establish that trial counsel actually was ineffective. *State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369. To demonstrate ineffective assistance of trial counsel, a defendant must show that trial counsel's performance was deficient and that this deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant fails to make an adequate showing as to one prong of the test, we need not address the other. *Id.* at 697.

¶14    A claim of ineffective assistance presents a mixed question of law and fact. *State v. Gutierrez*, 2020 WI 52, ¶19, 391 Wis. 2d 799, 943 N.W.2d 870. We will uphold the circuit court's factual findings unless they are clearly erroneous. *Id.* Whether trial counsel's performance was deficient and prejudicial are questions of law that we review independently. *Id.*; *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶15    We conclude that Willis has failed to establish that trial counsel performed deficiently. We agree with the State that trial counsel could not have made an adequate offer of proof with respect to the *Denny* evidence, and the circuit court would have been bound to bar any trial evidence or argument implicating Durrah in Hassel's murder.

¶16    To allege that a known third person committed a crime, the defendant must show that there is "a 'legitimate tendency' that the third person could have committed the crime." *State v. Denny*, 120 Wis. 2d 614, 623, 357

N.W.2d 12 (Ct. App. 1984) (citation omitted). This requires a three-pronged showing of motive, opportunity, and direct connection. ***State v. Wilson***, 2015 WI 48, ¶51, 362 Wis. 2d 193, 864 N.W.2d 52. All three factors must be shown before the evidence of a third-party perpetrator is admitted at trial. ***State v. Vollbrecht***, 2012 WI App 90, ¶26, 344 Wis. 2d 69, 820 N.W.2d 443. While a defendant need not "establish the guilt of third persons with that degree of certainty requisite to sustain a conviction," *see* ***Denny***, 120 Wis. 2d at 623, a defendant must show "more than mere possibility" that the third party was the one responsible for the crime, ***Wilson***, 362 Wis. 2d 193, ¶83.

¶17    Here, even if we assume without deciding that the evidence establishes opportunity and direct connection, we are not persuaded that Willis has established motive. The motive prong requires a showing that the third party had a "plausible reason" to commit the crime. ***Id.***, ¶57.

¶18    Willis argues that Durrah's motive was a $20 drug debt and that Durrah was angry with Hassel for reneging on a drug deal he arranged.[9] Willis observes that Durrah admitted he provided Hassel with drugs "lots of times"; he was angry with Hassel when she backed out of a drug deal he arranged with his brother two weeks before her death; he admitted to banging on her door at some point demanding the $20 she owed him; and he sold Hassel $100 of cocaine for $80 on the night of the murder.

---

[9] Trial counsel suggested that Durrah killed Hassel because she was a snitch. However, on the first day of the trial, the State indicated that this was investigated at the defense's request and Hassel was not a known informant. Willis does not pursue the snitch theory in his briefs and we do not discuss it further.

¶19    However, the evidence Willis presents does not support that Durrah killed Hassel over a drug debt. If Durrah was upset or angry at Hassel for backing out of a drug deal two weeks earlier or failing to repay money, it is highly implausible that Durrah would have sold Hassel $100 worth of cocaine at a discount on the day of the murder. Thus, Willis's alleged motive does not provide a "plausible reason" for Durrah to kill Hassel. *Id.*[10]

¶20    Therefore, we conclude that Willis has failed to show that there is a legitimate tendency that a third-party perpetrator committed the shooting. Accordingly, we are not persuaded that trial counsel was ineffective for failing to pursue a *Denny* defense. *See State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245 ("It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments."). Further, because Willis's ineffective assistance of trial counsel claim fails, his claim of ineffective assistance of postconviction counsel necessarily fails. *See Ziebart*, 268 Wis. 2d 468, ¶15.

        *By the Court.*—Judgment and order affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[10] We note that the circuit court found that trial counsel's testimony was incredible and trial counsel's failure to pursue a third-party defense was unreasonable. As the State observes, however, trial counsel's shortcomings regarding the rules of evidence and credibility issues do not overcome the fact that Willis was not entitled to a *Denny* defense as a matter of law.