# 2019 WI App 49

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2018AP649-CR

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL A. GRIFFIN,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | August 21, 2019 |
| Submitted on Briefs: | June 4, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:          On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jaymes K. Fenton* of *Fenton Law Office*, Milwaukee.

Respondent
ATTORNEYS:          On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald V. Latorraca*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

COURT OF APPEALS
DECISION
DATED AND FILED

August 21, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP649-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF411

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

DANIEL A. GRIFFIN,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1 REILLY, P.J. Daniel A. Griffin appeals from a judgment convicting him of first-degree reckless homicide and two counts of child abuse intentionally causing great bodily harm in the death of fourteen-month-old MHP and the injuries suffered by his twin brother, MDP. Griffin argues that the court

erroneously excluded evidence that the twins' mother caused MHP's death and the injuries to MDP. Griffin also argues that the court erroneously admitted videos of Griffin interacting with the twins as other-acts evidence. We reject all of Griffin's arguments and affirm.

BACKGROUND

¶2 On July 7, 2015, emergency personnel responded to a residence in Fond du Lac, Wisconsin, where MHP was unresponsive at the scene and subsequently pronounced dead.[1] An autopsy revealed that MHP died from a lacerated liver and that he also had broken ribs, bruising and bleeding on his penis, additional internal and external injuries, and a blood alcohol concentration (BAC) of .08. A doctor described the circumstances under which MHP died as a punch or kick to the area of the liver or stepping on or slowly pressing a foot down on a child's abdominal area. MDP was also brought to the hospital that same day with similar injuries, including a lacerated liver, broken ribs, additional internal injuries, and a BAC of .02.

¶3 Before trial, the State moved to prohibit Griffin from introducing evidence that the mother or another adult roommate were responsible for the twins' injuries. Griffin, in turn, sought to admit such evidence, citing a forensic interview of C.J. where he reported that the mother gave one of the twins "a whooping with a belt," that she kicked the twins, and "cracked" one of the twin's hands. Griffin also cited several incriminating statements the mother allegedly

---

[1] Three days before MHP's death, Griffin and the mother had moved to Fond du Lac and were living with one of the mother's friends, S.P., and her five-year-old son, C.J., along with the mother's other children.

2

made during police interviews, including that she stepped on the children "in a 'playful' manner." The circuit court considered whether it should admit the evidence under *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), ultimately concluding that the mother lacked a direct connection to the crime.

¶4 The State also moved to admit other-acts evidence under WIS. STAT. § 904.04(2) (2017-18),[2] which included three cell phone videos showing Griffin interacting with the twins in an abusive manner. Griffin objected, arguing that the videos did not fall within any permissible purpose under § 904.04(2). The State claimed that the videos were admissible to demonstrate Griffin's "motive, intent, and plan, to be verbally abusive and physically discipline … MHP and MDP" as well as place the actions of Griffin in the "proper context and complete the story of the defendant's criminal behavior." The court found the evidence probative and that its value substantially outweighed the danger of unfair prejudice.

¶5 After a five-day jury trial, Griffin was found guilty of all charges. Griffin appeals, arguing that the circuit court erred in denying the *Denny* evidence and allowing the cell phone videos to be admitted. For the reasons that follow, we conclude that the circuit court did not err.

## DISCUSSION

¶6 This case involves the circuit court's decision to both admit and refuse to admit evidence, which we review for an erroneous exercise of discretion. *State v. Wilson*, 2015 WI 48, ¶47, 362 Wis. 2d 193, 864 N.W.2d 52. "Although a

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

circuit court generally has the discretion to deny the admission of evidence, that discretion is subject to constitutional limitations; a circuit court may not refuse to admit evidence if doing so would deny the defendant's right to a fair trial," but that evidence must be relevant. *Id.*, ¶48. Where evidence is denied admission and it implicates a defendant's constitutional right to present a defense, that is a question of constitutional fact and we review the circuit court's decision de novo. *Id.*, ¶47.

### *Denny* Evidence

¶7      Our supreme court affirmed that the *Denny* "legitimate tendency" test "is the correct and constitutionally proper test for circuit courts to apply when determining the admissibility of [known] third-party perpetrator evidence." *Wilson*, 362 Wis. 2d 193, ¶52. *Denny* "created a bright line standard requiring that three factors be present" for admissibility of evidence that an alleged third-party perpetrator committed the crime. *Wilson*, 362 Wis. 2d 193, ¶51 (citing *Denny*, 120 Wis. 2d at 623-25). "When a defendant seeks to present evidence that a third party committed the crime for which the defendant is being tried, the defendant must show 'a legitimate tendency' that the third party committed the crime; in other words, that the third party had motive, opportunity, and a direct connection to the crime." *Wilson*, 362 Wis. 2d 193, ¶3 (citation omitted).

¶8      Under the motive prong, the court must question whether "the alleged third-party perpetrator [had] a plausible reason to commit the crime?" *Id.*, ¶57. The second prong of the *Denny* test—the opportunity prong—asks: "[C]ould the alleged third-party perpetrator have committed the crime, directly or indirectly? In other words, does the evidence create a practical possibility that the third party committed the crime?" *Wilson*, 362 Wis. 2d 193, ¶58. The third, and

final, prong asks whether there is "evidence that the alleged third-party perpetrator actually committed the crime, directly or indirectly?" *Id.*, ¶59. "The 'legitimate tendency' test asks whether the proffered evidence is so remote in time, place or circumstances that a direct connection cannot be made between the third person and the crime." *Denny*, 120 Wis. 2d at 624 (citation omitted). "[C]ircuit courts must assess the proffered evidence in conjunction with all other evidence to determine whether, under the totality of the circumstances, the evidence suggests that a third-party perpetrator *actually committed* the crime." *Wilson*, 362 Wis. 2d 193, ¶71. Courts must "look for some direct connection between the third party and the *perpetration* of the crime." *Id.*

¶9     Here, the circuit court determined that Griffin had met the motive and opportunity prongs of the *Denny* legitimate tendency test, and the parties agree on appeal that this case turns only on the direct connection prong. Proof of motive and opportunity alone are not enough to introduce the evidence of the mother's conduct. *See Wilson*, 362 Wis. 2d 193, ¶64 ("[T]he *Denny* test is a three-prong test; it never becomes a one- or two-prong test."). Considering whether the mother has a direct connection to the crimes of first-degree reckless homicide and child abuse intentionally causing great bodily harm, we conclude that the circuit court properly denied Griffin's *Denny* motion.

¶10     Griffin admits that the circuit court "did assess all three [*Denny*] prongs in great detail" at the hearings. Griffin argues, however, that the circuit court erred as Griffin established that the mother had a direct connection to the commission of the crime. First and foremost, Griffin claims that the mother's own admission that she had stepped on the twins in the past "in a playful manner" established a strong direct connection as the medical examiner testified that the injuries to the twins could have been caused by an adult standing on the child or

stepping on the child's abdomen. We disagree. We note that while a party's self-incriminating statement *can* be used to demonstrate a direct connection, *see Wilson*, 362 Wis. 2d 193, ¶72, the record in this case does not support such a finding.

¶11 In his brief-in-chief, Griffin states that "[i]n one of her interviews with law enforcement officers, [the mother] admitted to stepping on the twins 'in a playful manner' on past occasions." In support of that statement in his appellate brief, Griffin cites to his own response to the State's Memorandum to Preclude Third Party Liability Evidence, which fails to cite any support for the mother's alleged statement except to reference "one of these [law enforcement] interviews," as well as the transcript from the hearing where the court commented that the mother "did admit to stepping on the kids in a playful manner." Griffin further notes in his reply brief:

> The state refuses to concede, however, that [the mother] admitted to stepping on the twins. In its responsive brief the state downplays [the mother's] admission to such conduct by reducing them only to unproven allegations by Griffin. This could not be further from the truth. In his motion to the circuit court seeking admission of the *Denny* evidence, Griffin first raised [the mother's] admission to stepping on the twins. At no point before the circuit court was this disputed by the state.
>
> Taking it one step further, the circuit court itself recognized that [the mother] admitted to such conduct. The court explicitly noted that [the mother] admitted to stepping on her children, and that her efforts to minimize that conduct by calling it "playful" was absolutely nonsensical. Again, the state did not object to or dispute this statement from [the mother] cited by the court.

6

¶12     This court's independent review of the record on appeal reveals a decidedly different factual scenario than the one we are led to believe by Griffin. During the recording of the mother's second interview by law enforcement conducted at the hospital on July 8, 2015,[3] one of the officers asked the mother if she "ever play[ed] this game where you act like you are going to step on [MHP's] tummy with a foot and then step off?" She responded, "Yes, with my older kids I have. With my older son. But it don't be nothing like 'let me hurt you' type thing. It be more of like wrestling type thing." The officer then went on to explain that MHP's liver could have been damaged from playing around in this way, suggesting that maybe the mother went "to step on the baby to do the joking thing and you lose your balance." The recording indicates that the mother adamantly responded that "it don't be with the twins. They are too young…. Why would you step on the twins. Come on now." When the officer tried to push the topic again, the mother stated matter-of-factly, "But see, it hasn't happened." Based on this record, Griffin's statement that "[the mother] admitted to stepping on the twins" is false. In fact, the mother flat out denied to police that she ever stepped on the twins playfully or otherwise.

¶13     As for Griffin's statement that "the circuit court itself recognized that [the mother] admitted to such conduct," we note that while the circuit court stated that she "did admit to stepping on the kids in a playful manner," it also admitted prior to that statement that it did not "have the discovery here, so. All I have is what you provide to me with these motions." Thus, the court's reference to the mother stepping on the twins came directly from Griffin's own response to

---

[3]  The recording of this interview was included in the appellate record on a flash drive.

the State's motion and not from the mother's direct statements. Given this record on appeal, we cannot find a direct connection between the mother and the crimes committed based on her self-incriminating statements as she never admitted to stepping on the twins.

¶14    Griffin also argues that other evidence that Griffin proffered was sufficient to show a direct connection between the mother and the injuries to the twins, specifically her own admissions that she physically punished the children in the past as well as C.J.'s statements that he had seen the mother and Griffin abuse the twins. In reaching its determination on the ***Denny*** evidence, the court appeared skeptical as to "the comments attributed to [the mother] that [Griffin's attorney] put in his memorandum," and, thus, the court indicated that it "wanted to watch the DVD" of the interview. At the hearing, the circuit court summarized the evidence presented by C.J.'s interview[4]:

> So what C.J. said was that [the mother] whoops kids hard. That she whooped the twins. That she had whooped Fat-Fat with a belt every place. That Chocolate got a whooping last week by [the mother] with a belt, including a whooping on Chocolate's head. That Fat-Fat was in trouble the week prior. Fat-Fat cries when he gets a whooping. That [the mother] said shut up, mother fucker when Fat-Fat was crying.
>
> ….
>
> That [the mother] whoops with a hangar. That the twins had been whooped by a hangar by [the mother]. That [the mother], Mr. Griffin, C.J.'s mom kicked the kids. That [the mother] … [k]icked Fat-Fat in the leg and hurt Chocolate's hands.

---

[4] C.J. refers to the twins as "Fat-Fat" and "Chocolate" during the interview, but there is no indication in the record of which twin is connected to which nickname. The State, however, suggests that MDP is "Chocolate" and MHP is "Fat-Fat."

¶15 Similarly, the court summarized the interview law enforcement conducted with the mother eight days after the alleged offense where she "admitted that she used a belt to whoop her kids" and vacillated between stating that C.J. was lying and then changing her mind claiming that she must have hit her children "because C.J. does not lie." The mother repeatedly stated that "she didn't do it," that "[s]he would never intentionally hurt her babies," and that "Mr. Griffin had to do it" as "Mr. Griffin had the kids the day that the one child was killed." The mother also acknowledged that "she knows it looks bad but she is innocent" and "she knows she didn't kill her baby but that she had to take responsibility for it" as "she felt it was her fault that she didn't protect her kids." During the interview, the mother admitted that she came out of the bathroom to find Griffin

> standing on one of the twins with his foot kind of diagonally over the chest and stomach area, kind of balancing on the twin…. And then she said something about the noodles and ran downstairs.
>
> She said that the reason she didn't say anything to Mr. Griffin was that she was in shock and she was afraid.

The court concluded, based on its review of the mother's interview, that she never "admitted to hurting or killing the twins."

¶16 We conclude that C.J.'s allegations of physical abuse by the mother do not provide a sufficient direct connection between the mother and the perpetration of the crime charged. At most, C.J. claimed that the mother kicked one of the twins in the leg and hit them with a hanger and a belt, which a doctor opined would not have caused the damage suffered by the twins. Further, within the court's discussion of Griffin's motion to admit C.J.'s recorded interview at trial, the court questioned the admissibility of C.J.'s interview, expressing

9

concerns with the trustworthiness of C.J.'s statements.[5] The court observed that in the first part of the interview, the interviewer did not appear to obtain any relevant information, and it was only after the interviewer began asking leading questions that more information came. C.J.'s answers, however, "didn't make any sense at all" and "[s]ome of the answers he gave were inconsistent with answers he had given 10 minutes earlier." For example, C.J. first denied knowing a child named Chocolate, and he did not know if Fat-Fat had a brother. Given the court's reservations about the trustworthiness of C.J.'s statements, we find that its value in creating a direct connection between the mother and the charged crimes is lacking.

¶17     Without C.J.'s statements, all that remains is the mother's own admissions in her interview with police that she "whoop[ed]" her kids. Her statements do not establish a direct connection to the events that took place on that date, to the injuries that the twins received, or to the specific crimes charged such

---

[5] At the hearing, there were several matters before the court, including Griffin's motion regarding third-party perpetrator evidence under *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), and his motion to introduce C.J.'s interview recording at trial. The court's comments regarding the reliability or the trustworthiness of C.J.'s statements came from its discussion of Griffin's Defense Motion to Utilize Audio\Visual Recorded Statement of Child at the Jury Trial, Pursuant to WIS. STAT. § 908.08. The court, noting that the relevancy of the video interview was linked to the introduction of the *Denny* evidence, provided Griffin the opportunity to withdraw his motion as C.J.'s interview also implicated Griffin as being abusive. Griffin later withdrew his motion to admit C.J.'s recorded statement, calling its usefulness contingent on the court granting the *Denny* motion. Griffin does not appear to be reasserting an argument that the video recording of C.J.'s interview should have been admitted on appeal, and we address it no further.

that it can be said that she "*actually committed* the crime[s]."[6]  *See **Wilson***, 362 Wis. 2d 193, ¶71.  Accordingly, the circuit court properly concluded that the mother lacked a direct connection to the *perpetration* of the crimes.

*Other-Acts Evidence*

¶18    Griffin also argues that the circuit court erred in admitting other-acts evidence consisting of cell phone videos depicting allegedly abusive interactions between Griffin and the twins.  The State moved to admit three video files extracted from Griffin's cell phone.[7]  In one video from July 5, 2015, Griffin was on the bed next to MHP and MDP, who were both sleeping.  The video showed "the defendant then move[] his head to within 6-12 inches of the twins' heads and yells extremely loud, causing the twins to flinch" and then catches one of the twin's reactions.  The second video is similar and from the same date, and in it the "defendant is again recording himself and after a few seconds of silence again yells 'HEY' and again moves the camera toward the infants."  The two videos were received at trial, and the court provided the jury with a cautionary

---

[6] Griffin argues that the circuit court erroneously exercised its discretion by improperly taking into consideration the strength of the State's case against Griffin when it made its determination, citing **State v. Wilson**, 2015 WI 48, ¶61, 362 Wis. 2d 193, 864 N.W.2d 52. Specifically, Griffin challenges the court's mention of text messages Griffin sent in the days after the crime suggesting that the mother could not have committed the crime and asserting instead that S.P. was the perpetrator.  We note that **Wilson** provides that "[o]verwhelming evidence against the defendant may not serve as *the basis* for excluding evidence of a third party's opportunity (or direct connection to the crime)." ***Id.***, ¶69 (emphasis added).  While the court mentioned the text messages, we see no statement precluding the court from considering Griffin's statements or other evidence against him so long as it did not serve as "the basis" for excluding the evidence without more.  The court sufficiently considered multiple evidentiary factors in reaching its decision.

[7] The court initially admitted the third video, but then excluded it at trial when it was determined that it did not involve the twins.

instruction, directing the jury to consider the videos "only on the issues of intent and background" and not "to conclude that the defendant has a certain character."

¶19    We review a circuit court's admission of other-acts evidence for an erroneous exercise of discretion.  *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998).  "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach."  *Id.* at 780-81.  WISCONSIN STAT. § 904.04(2) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but the statute "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Courts apply a three-step analysis to determine the admissibility of other-acts evidence.  *Sullivan*, 216 Wis. 2d at 771.  Other-acts evidence is properly admitted if:  it is offered for a permissible purpose under § 904.04(2), it is relevant under the two relevancy requirements found in WIS. STAT. § 904.01,[8] and its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03.  *Sullivan*, 216 Wis. 2d at 772-73.

¶20    The circuit court reasonably concluded that the other-acts evidence was admissible.  First, the circuit court determined that the State was offering the

---

[8] "Relevance under WIS. STAT. § [] 904.01 has two components; the evidence must relate to some fact that is of consequence to the determination of the action, and it must have some tendency to make that fact more or less probable than it would be without the evidence."  *State v. Davidson*, 2000 WI 91, ¶64, 236 Wis. 2d 537, 613 N.W.2d 606.

other-acts evidence for "motive, intent, plan and context," which are all "acceptable purposes." Relying on *State v. Gray*, 225 Wis. 2d 39, ¶34, 590 N.W.2d 918 (1999), the court noted that "[i]ntent involves knowledge, hostile feeling, or the absence of accident, inadvertence, or casualty—a varying state of mind which is the contrary of an innocent state of mind." Further, quoting from *State v. Payano*, 2009 WI 86, 320 Wis. 2d 348, 768 N.W.2d 832, the court explained that evidence relating to context or background is admissible as it provides "a more complete presentation of the evidence relating to the offense charged." *Id.*, ¶64 n.13 (citation omitted). We agree with the circuit court that the videos were offered for an acceptable purpose.

¶21    Next, the court found, under the second prong, that the videos were relevant "at the very least with respect to [the child abuse counts]" as "intent is an element of the offense." Noting specifically that the two videos in question were near in time and place to the incident as they were recorded two days before MHP's death in the same house and involving the same children, it also found that the videos were probative with respect to intent and showed the "context of the relationship between the defendant and the twins." *See Whitty v. State*, 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967). We see no error.

¶22    Finally, the circuit court concluded that the probative value of the evidence would not be substantially outweighed by any unfair prejudice. Again, we agree. "By its very nature, nearly all evidence operates to the prejudice of the party against whom it is offered." *State v. Murphy*, 188 Wis. 2d 508, 521, 524 N.W.2d 924 (Ct. App. 1994).

> Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a

jury to base its decision on something other than the established propositions in the case.

*Sullivan*, 216 Wis. 2d at 789-90. The court determined that

[t]his isn't a situation where the other acts evidence is as serious or worse than what's alleged here. It's quite the contrary. The allegations here are very, very serious and I think egregious. And the other acts evidence of yelling by the sleeping twins … doesn't come anywhere close to rising to that level.

Not only was the content of the videos less serious than the allegations in the complaint, but it was also not similar enough to the charged conduct where "there is danger the jury will simply presume the defendant's guilt in the current case." *See Payano*, 320 Wis. 2d 348, ¶¶90, 94 ("The situation in which unfair prejudice is most likely to occur is when one party attempts to put into evidence other acts allegedly committed by the opposing party that are similar to the act at issue in the current case.").

¶23 Moreover, the circuit court minimized any risk of unfair prejudice to Griffin by its cautionary jury instruction, which "eliminate[s] or minimize[s] the potential for unfair prejudice." *State v. Hammer*, 2000 WI 92, ¶36, 236 Wis. 2d 686, 613 N.W.2d 629; *see also State v. Grande*, 169 Wis. 2d 422, 436, 485 N.W.2d 282 (Ct. App. 1992) (jurors are presumed to follow such cautionary instructions). Accordingly, we conclude the circuit court's determination that the other-acts evidence should be admitted had a reasonable basis and the court did not erroneously exercise its discretion.

## CONCLUSION

¶24 In summary, we conclude that the circuit court properly denied Griffin's request to admit *Denny* evidence that the mother was responsible for the injuries to the twins as she lacked a direct connection to the perpetration of the

crimes. We further affirm the circuit court's decision to admit the other-acts evidence as it satisfied all three prongs of the *Sullivan* test for admissibility.

*By the Court.*—Judgment affirmed.