COURT OF APPEALS
DECISION
DATED AND FILED

**January 15, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1556**

Cir. Ct. No. 2005CF381

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

STEVEN A. AVERY,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Manitowoc County: ANGELA W. SUTKIEWICZ, Judge. *Affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Steven A. Avery appeals a circuit court order denying his WIS. STAT. § 974.06 (2021-22)[1] motion without a hearing on the basis that his motion was insufficiently pled.  On appeal, Avery argues his motion was sufficiently pled to warrant an evidentiary hearing.  We disagree and affirm the circuit court's order.

## BACKGROUND

¶2     This is the third time Avery is before this court on appeal.  We have previously summarized the facts of this case in *State v. Avery (Avery I)*, 2011 WI App 124, 337 Wis. 2d 351, 804 N.W.2d 216, and *State v. Avery* (*Avery II*), No. 2017AP2288-CR, unpublished slip op. (WI App July 28, 2021).

¶3     For context, on October 31, 2005, Avery arranged for Teresa Halbach, a twenty-five-year-old professional photographer, to photograph a vehicle at Avery's Auto Salvage.  *Avery I*, 337 Wis. 2d 351, ¶4.  At the time, Avery's Auto Salvage was located on a forty-acre piece of property owned by Avery's parents, Allan and Delores.  *Id.*, ¶5.  Avery, along with his brother Charles, lived on the property and worked at the salvage yard business.  *Id.* Another brother, Earl, worked at the salvage yard but did not live on the property. *Id.* Avery's sister, Barb Janda, lived in a trailer on the property with three of her sons, Bobby, Blaine and Brendan Dassey.  *Id.*

¶4     As relevant, Bobby Dassey, then nineteen years old, reported that, on October 31, 2005, he was looking out a window from his family's trailer and

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

saw Halbach arrive at approximately 2:30 p.m., take photographs of a vehicle, and walk toward Avery's trailer. Bobby then stepped away from the window. He never saw Halbach again. On November 3, Halbach's mother reported her missing. *Id.*, ¶6. On November 5, volunteer searchers found Halbach's RAV4 in the Avery salvage yard. *Id.* "The vehicle was covered with branches, plywood and the hood of another vehicle." *Id.*

> After finding the RAV4, police searched the Avery property and, over the course of the next four months, discovered and identified evidence including: burned bone fragments in and around a burn pit, with DNA matching Halbach's; both Avery's and Halbach's blood in the RAV4; the remnants of electronic devices and a camera, the same models as Halbach's, in a burn barrel; Halbach's RAV4 key in Avery's bedroom, with Avery's DNA on it; Avery's DNA on the hood latch of the RAV4 (deposited, the State later claimed, by Avery's sweaty hands); and a bullet and bullet fragments in Avery's garage, containing Halbach's DNA.

*Avery II*, No. 2017AP2288-CR, ¶3.

¶5 The State charged Avery, in part, with first-degree intentional homicide as a party to a crime and felon in possession of a firearm. The case proceeded to a five-week jury trial during which Avery's defense was that law enforcement was biased against him and planted the evidence to implicate him, which the "real killer" exploited to also plant evidence on the property. *Avery I*, 337 Wis. 2d 351, ¶4. The jury found Avery guilty.

¶6 In 2009, Avery moved for a new trial, in part, based on the circuit court's erroneous exclusion of Avery's third-party perpetrator evidence during trial. *Id.*, ¶9. Avery wanted to implicate several alternative perpetrators in Halbach's murder, including, as relevant for the present appeal, Bobby. *Id.*, ¶¶37,

3

49. The circuit court denied the motion. *Id.*, ¶9. Avery appealed, and we affirmed. *Id.*, ¶3. We determined:

> The third-party liability evidence proffered by Avery identified a large group of individuals who he claimed were near the Avery property on the date of Halbach's murder but who he acknowledged had no motive to harm her. This evidence failed to satisfy the "legitimate tendency" test under *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984),[2] and was properly deemed inadmissible.

*Avery I*, 337 Wis. 2d 351, ¶2.

¶7 In 2017, Avery filed another WIS. STAT. § 974.06 motion raising new claims. *Avery II*, No. 2017AP2288-CR, ¶6. The circuit court denied the motion, and Avery filed motions to vacate and for reconsideration as well as two supplemental postconviction motions. *Id.*, ¶6 n.3. In one of his supplemental postconviction motions, Avery included an argument that the State withheld evidence and this evidence would have established a *Denny* third-party perpetrator defense that Bobby had motive to kill Halbach. *Id.*, ¶63. The court rejected Avery's arguments without a hearing, and Avery appealed. *Id.*, ¶1.

¶8 On appeal, Avery argued, in part, the State improperly withheld evidence that Avery could have used at trial to establish Bobby had a motive to kill Halbach. *Id.*, ¶63. Avery pointed to the final investigative report of Detective Mike Velie, saved on a CD (the "Velie CD"), which Avery claimed he received in 2018. *Id.* Velie created this report through forensic examination of the hard drive

---

[2] "*Denny* 'created a bright line standard requiring that three factors be present' for admissibility of evidence that an alleged third-party perpetrator committed the crime." *State v. Griffin*, 2019 WI App 49, ¶7, 388 Wis. 2d 581, 933 N.W.2d 681 (citation omitted). Specifically, the defendant must demonstrate a "legitimate tendency" that the third party committed the crime, that is, that the third party had motive, opportunity, and a direct connection to the crime. *Id.*

of a computer from the Dassey family household. *Id.* Velie's report identified items such as pornography, internet search terms, and chat messages from the Dassey family computer. *Id.* Avery argued that the "violent pornography" contained on the Velie CD could have been used as *Denny* evidence because it revealed Bobby had a "propensity for sexual violence" and therefore a motive to kill Halbach. *Id.*

¶9  We disagreed. *Id.*, ¶¶64-65. We determined the State did not improperly withhold evidence because it was undisputed that Avery's trial counsel had been given a copy of the Dassey family computer hard drive and the Velie CD did not contain any additional information other than what was provided to counsel. *Id.*, ¶64.

¶10  We also determined Avery failed to establish trial counsel was ineffective for failing to analyze the Dassey family computer hard drive. *Id.*, ¶67. We first noted that Avery's assertions that "only [Bobby] could have downloaded the images" from a communal computer used by several people were factually unsupported. *Id.*, ¶67 n.25. We then explained that even if the Velie CD could be used to establish the motive prong of the *Denny* test, "Avery failed to meet the 'direct connection' requirement in his original *Denny* motion and has not presented additional evidence on this point." *Id.*, ¶67. Therefore, Avery could not demonstrate a reasonable probability of a different outcome at trial. *Id.*

¶11  In 2022, Avery filed the WIS. STAT. § 974.06 motion underlying the present appeal. He first argued testimony from his newly-discovered witness, Thomas Sowinski, "provides the missing direct connection between Bobby and Ms. Halbach's murder making him [Bobby] a *Denny* suspect." In support, Avery attached Sowinski's affidavit to his motion.

¶12    Sowinski averred that before sunrise on Saturday, November 5, 2005, he was delivering papers to Avery's Auto Salvage. While there, Sowinski saw Bobby and an unidentified older male in his fifties or sixties with a long grey beard "pushing a dark blue RAV-4 down Avery Road on the right side towards the junkyard." Bobby did not look happy to see Sowinski and attempted to step in front of Sowinski's vehicle to prevent him from leaving. Sowinski swerved around Bobby and called out, "Paperboy. Gotta go." Sowinski believed that Bobby and the older individual "were doing something creepy." Sowinski learned Halbach's RAV4 was found in the salvage yard later that day. Sowinski averred he contacted police, and an officer told him, "We already know who did it," as well as told him they would contact him, but never did.[3]

---

[3] In his initial affidavit, dated April 10, 2021, Sowinski averred he gave this information to Avery's trial attorneys. In August 2022, Sowinski amended his affidavit, in part, to reflect that he did not give this information to Avery's trial attorneys, but instead emailed the Innocence Project in New York. He then attached the body of an email that he sent more than eight years earlier, in January 2016.

The January 2016 email is different from Sowinski's current affidavit in several respects. In the email, Sowinski stated "[a]fter seeing the documentary on [N]etflix [he] decided that someone other than [M]anitowoc [C]ounty officials needs to [hear] this." He wrote that "[s]omewhere between Oct 31st and November 5th 2005, not sure which day," he went to Avery's property to deliver a paper. He said he ran into two people pushing "a dark colored small suv down the road .… They were pushing in the direction towards the house from the highway." Sowinski wrote, "It was dark a[n]d I delivered the papers as soon as possible each day so I could get home in time to get my son ready for school and drop him off." He said he "didn't s[e]e who the man was on the passenger side but the young man, maybe 18 or so that tried to stop me was not [B]rendan [D]assey. His build was thin and fit and about 5'9" tall." Sowinski wrote that "after seeing the footage on t.v. of the rav 4 being found on the property[,] it clicked that it wa[s] probab[l]y the suv I had seen that night." He said he "called police and notified them. They didn't [seem] interested at all and said thanks for the info. Never asked me to fill out a report or even ask for my name or phone number."

(continued)

¶13    In his motion, Avery asserted:

> [T]his new evidence allows for a reconsideration of the real motive of this crime, as being a sexual homicide, which was the culmination of an obsession by Bobby with viewing thousands of images of violent, deviant pornography. On October 31, 2005 the obsessive fantasies of Bobby became a horrible reality when Teresa Halbach was brutally assaulted and murdered by two rifle shots to her skull. Her body was mutilated as were many of the female subjects in the Dassey computer images. Bobby was in possession of the Halbach vehicle, which contained the crucial evidence of this terrible crime: Ms. Halbach's blood, key, electronic devices, and license plate (which was concealed in another salvage car) and Mr. Avery's carefully deposited blood on the seats and dash and DNA on the hood latch. By being in possession of the vehicle Bobby was able to control the direction of the investigation. He planted the vehicle on the Avery property after he deposited Mr. Avery's blood and DNA in it. He had Ms. Halbach's key and electronic devices which ended up in Mr. Avery's bedroom and burn barrel. Bobby did all of this to exculpate himself and to frame his uncle, Mr. Avery.

Avery also argued the State committed **Brady** violations for failing to disclose the Sowinski evidence and for failing to disclose evidence from witness Kevin Rahmlow, who averred he observed Halbach's vehicle on the street days after her disappearance. Finally, Avery sought a new trial in the interests of justice.

¶14    After briefing on Avery's postconviction motion concluded, but before the circuit court decided the motion, Avery filed an affidavit from another purportedly new witness, Thomas Buresh. Buresh averred he saw Bobby driving a

---

Sowinski sent another email in December 2020. This email is also different in several respects from his current affidavit and his January 2016 email. In the December 2020 email, Sowinski wrote, "Just finished 2nd season." He continued, "A few days before they found the Rav[,] I was deliver[ing] papers at about 1-2 am and saw Bobby [D]assy and another old man pushing the Rav down the road." Sowinski stated, "I did call [the] police and they said they would contact me, they never did."

RAV4 sometime before 2:00 a.m. on the night of Friday, November 4, 2005, to the morning of Saturday, November 5, 2005.

¶15  The circuit court denied Avery's motion without an evidentiary hearing on the basis that the motion was insufficiently pled. Avery appeals. Additional facts will be provided below.

## DISCUSSION

¶16  The issue in this case is whether Avery's WIS. STAT. § 974.06 motion was sufficient on its face to entitle him to an evidentiary hearing. As a threshold matter, we observe that on appeal, Avery makes no argument regarding the sufficiency of his pleaded ***Brady*** or interests-of-justice claims. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned."). We will therefore not consider them further.

¶17  As to Avery's newly-discovered evidence claims and whether his motion was sufficient to entitle him to an evidentiary hearing, sufficiency of a postconviction motion is a question of law, which we review de novo. *See **State v. Balliette***, 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334. "If the motion raises sufficient facts that, if true, show that the defendant is entitled to relief, the circuit court must hold an evidentiary hearing." ***Id.*** If the motion is conclusory, or if the record conclusively demonstrates that the movant is not entitled to relief, the circuit court may deny the motion without a hearing. *See **id.***

¶18  In his WIS. STAT. § 974.06 motion, Avery alleged he had newly-discovered evidence from a new witness that "provides [the] direct connection between Bobby and the Halbach murder and planting evidence to frame

Mr. Avery." (Capitalization and emphasis omitted.) When seeking a new trial based on the allegation of newly-discovered evidence, "a defendant must establish by clear and convincing evidence that '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking [the] evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Edmunds*, 2008 WI App 33, ¶13, 308 Wis. 2d 374, 746 N.W.2d 590 (citation omitted). "Once those four criteria have been established, the court looks to 'whether a reasonable probability exists that a different result would be reached in a [new] trial.'" *Id.* (citation omitted).

¶19 The circuit court determined that the Sowinski evidence satisfied the first two prongs of the newly-discovered-evidence test (evidence was discovered after Avery's conviction and Avery was not negligent in seeking the evidence). However, the circuit court stopped its newly-discovered-evidence analysis after it determined Avery failed to demonstrate that the evidence was material to his third-party perpetrator defense.[4] Third-party perpetrator evidence is only material if it would be admissible under *Denny*. *State v. Vollbrecht*, 2012 WI App 90, ¶25, 344 Wis. 2d 69, 820 N.W.2d 443.

¶20 On appeal, Avery argues the circuit court erred by only analyzing the materiality of his newly-discovered evidence within the confines of a third-party perpetrator defense. He argues "[in] determining that Mr. Avery's new evidence could only be material to the issue of a potential third-party suspect, [the

---

[4] Avery's brief to this court incorrectly states the circuit court found that "Avery satisfied all the elements required to admit his newly discovered evidence … but for the materiality requirement." Because the circuit court found that Avery's motion failed to meet the materiality requirement, it did not reach the fourth prong of the test or determine whether a reasonable probability existed that a different result would be reached at trial.

court] completely ignored its inherent materiality to other material issues in Mr. Avery's case."

¶21    To the extent Avery's postconviction motion could be interpreted that the Sowinski evidence was independently material of any third-party perpetrator defense, we conclude his motion is insufficiently pled. Avery only analyzed the Sowinski evidence within the context of a third-party perpetrator defense. As one example, the fourth prong of the newly-discovered-evidence test requires a defendant to establish the newly-discovered evidence is not cumulative. *See Edmunds*, 308 Wis. 2d 374, ¶13. In regard to that prong, Avery offered a single sentence: "The Sowinski evidence provides, for the first time, the 'missing' direct connection to Bobby as a third party suspect for Ms. Halbach's murder and is therefore not cumulative." Avery did not offer any analysis that explained why his newly-discovered evidence was not cumulative outside of his third-party perpetrator defense.

¶22    As another example, in Avery's analysis of whether a reasonable probability exists that a different result would be reached at trial, Avery argued:

> If Bobby is established as a viable third party *Denny* suspect, the forensic evidence in this case is completely undermined. The newly discovered evidence that Bobby was in possession of Ms. Halbach's vehicle means that he had opportunity and access to plant evidence in the vehicle and from the vehicle. Because Bobby has been directly linked to the murder of Ms. Halbach there is a reasonable inference that he planted the bones in Mr. Avery's burn pit.
>
>     … This new evidence creates a reasonable probability that, had the jury heard the new evidence, it would have had a reasonable doubt as to the defendant's guilt.

10

> Therefore, Mr. Avery should be granted a new trial. *See* [*Vollbrecht*, 344 Wis. 2d 69, ¶37].[5]

¶23 Again, Avery did not offer any analysis that explained why his newly-discovered evidence created a reasonable probability of a different outcome on retrial that was independent of his assertions that Bobby murdered Halbach and framed him for it. The circuit court properly recognized Avery's newly-discovered evidence was not independent from Avery's attempt to meet *Denny* and addressed whether the evidence was material within the confines of his third-party perpetrator argument.

¶24 Avery next argues the circuit court erred by denying his postconviction motion because he asserts his newly-discovered evidence satisfied *Denny*'s legitimate tendency requirement and established Bobby murdered Halbach and framed him for it. Avery contends the circuit court erroneously imposed a substantial certainty requirement and misapplied *Denny* in its evaluation of whether Avery's proffered evidence satisfied the *Denny* elements of motive, opportunity, and direct connection.

¶25 As stated previously, third-party perpetrator evidence is only material if it would be admissible under *Denny*. *Vollbrecht*, 344 Wis. 2d 69, ¶25. Under *Denny*, the defendant must show "a legitimate tendency" that the third party committed the crime, which is demonstrated by establishing the third party had motive, opportunity, and a direct connection to the crime. *State v. Wilson*, 2015 WI 48, ¶3, 362 Wis. 2d 193, 864 N.W.2d 52. A defendant's offer of proof

---

[5] In *Vollbrecht*, we affirmed the circuit court's grant of a new trial on the basis that the newly-discovered evidence satisfied the requirements of *Denny* and created a reasonable probability of a different outcome on retrial. *See State v. Vollbrecht*, 2012 WI App 90, ¶37, 344 Wis. 2d 69, 820 N.W.2d 443.

on these three prongs is insufficient if it merely establishes a bare possibility that the third party could have been the perpetrator. *Id.*, ¶83.

¶26 We will start with motive. "'Motive' refers to a person's reason for doing something." *Id.*, ¶62 (citation omitted). In evaluating the motive prong, we ask whether the "alleged third-party perpetrator ha[d] a plausible reason to commit the crime." *Id.*, ¶57.

¶27 In his postconviction motion, Avery asserted Bobby had motive to kill Halbach because Bobby searched for violent pornographic images on the family computer, which established Bobby had an obsession with violence and was more likely to commit murder. In support of his theory, Avery first alleged in his motion that there were "1,625 violent pornographic images" recovered on the Velie CD. He stated the recovered pornographic images "depicted violent images of the torture and mutilation of young females."

¶28 These statements are not supported by the record citations offered by Avery in his postconviction motion. His computer expert's affidavit, which he cites in support of his first proposition, does not establish there were "1,625 violent pornographic images" on the Dassey family computer. The report simply states there were "1,625 additional images categorized as 'Recovered Pornography.'" Nothing in this affidavit established that each recovered pornographic image was "violent." As for Avery's next assertion that the recovered images "depicted violent images of the torture and mutilation of young females," Avery cites pages from his computer expert's affidavit in support of that proposition. However, again, the page citations offered by Avery do not establish the pornographic images were "violent images of torture and mutilation." At best, the citation provides that the Velie CD contained "2,632 search results for terms":

> i. Blood (1 result); ii. Body (2083 results); iii. Bondage (3 results); iv. Bullet (10 results); v. Cement (23 results); vi. DNA (3 results); vii. Fire (51 results); viii. Gas (50 results); ix. Gun (75 results); x. Handcuff (2 results); xi. Journal (106 results); xii. MySpace (61 results); xiii. News (54 results); xiv. Rav (74 results); xv. Stab (32 results); xvi. Throat (2 results); and xvii. Tires (2 results).

These search terms in no way establish that the pornographic images were "violent images of torture and mutilation."

¶29    That being said, we recognize the Record does at least suggest there were some pornographic as well as gory images found on the Dassey family computer. We will therefore assume for purposes of Avery's postconviction motion that there was some quantity of what could be classified as violent pornographic images found on the communal computer.

¶30    However, even with that assumption, the fundamental problem with Avery's motion is that he fails to tie these violent pornographic images to Bobby. In his postconviction motion, Avery attempted to tie these images to Bobby by arguing that because Bobby routinely worked night shifts and was at home during the day from 7:00 a.m. to 3:30 p.m., while other members of his family were routinely at school or at work, it followed that Bobby conducted the searches for these images. This is conclusory and speculative.[6]

---

[6] In support of his assertion that "[t]here is sufficient evidence that it was only Bobby who had access to the Dassey computer during the day on weekdays between approximately 7:00 a.m. to 3:30 p.m.," Avery offers, in part, a record citation to a State's brief. In the record citation offered by Avery, the State argued:

(continued)

13

¶31   Moreover, to establish Bobby's purported obsession with violence, Avery alleged "128 searches for the most violent porn images primarily occurred on weekdays when only Bobby was in the Dassey residence." In support, Avery cited his computer expert's second supplemental affidavit. However, of the searches listed, only twenty-eight of them occurred between 7:00 a.m. and 3:45 p.m. on a weekday. Then, of those twenty-eight searches, only three of them occurred before Halbach's murder. Even accepting Avery's unsupported speculation that "only Bobby … had access to the Dassey computer" during that timeframe and conducted the searches, and assuming that the three searches were in fact for violent pornography, Avery failed to explain in his postconviction motion how someone only possibly having searched for pornography three times established his theory of motive—that "Bobby had an obsession with violence and therefore was more likely to commit murder." His allegation is conclusory and speculative.

¶32   The circuit court found that Avery's motion was insufficiently pled because Avery provided nothing that would establish Bobby was the one who conducted the searches for the pornography found on the Dassey family computer or that he was even at home at the time the searches were conducted. The circuit

> The computer was accessible to numerous people. Brendan Dassey, Blaine Dassey, Scott Tadych, Bryan Dassey, Bobby Dassey, Barb Janda, and Tom Janda all either lived in the house or had visited the house up until October 15, 2005, when Tom Janda moved out. The four Dassey brothers and Barb Janda lived in the residence from October 31, 2005, to March 1, 2006, when Brendan Dassey was arrested. Steven Avery was a regular visitor to the Dassey house, giving him access to the computer as well.

This passage demonstrates the need for nonconclusory evidence establishing Bobby was the individual who searched for the specific images of alleged violent pornography.

court also observed the search terms used were generic and broad and did not closely resemble anything about this case. The circuit court noted that there were only a small amount of searches that occurred before Halbach's murder.[7] The court also observed the two expert opinions Avery submitted were based on the unsupported assumption that Bobby conducted the searches and were produced without any forensic or psychological examination of Bobby himself. We agree with the circuit court that Avery's postconviction motion does not sufficiently allege nonconclusory facts that Bobby had motive to kill Halbach.[8]

¶33　　We could stop the analysis here. After all, by failing to sufficiently allege nonconclusory facts demonstrating Bobby had motive to kill Halbach, Avery has not established that his newly-discovered Sowinski evidence is material for his third-party perpetrator defense. *See* **Wilson**, 362 Wis. 2d 193, ¶64 ("[T]he **Denny** test is a three-prong test; it never becomes a one-or two-prong test.");

---

[7] In his brief to this court, Avery argues that the circuit court erred by determining only a "small" number of searches occurred before Halbach's murder. He asserts that "on September 18, 2005, there were 75 searches of violent, child, or underage pornography performed on the Dassey computer, obviously prior to Ms. Halbach's murder." In support, he does not cite to a fact pled in his postconviction motion; instead, he cites to one of the eighty-four exhibits he attached to his postconviction motion—specifically, a supplemental affidavit from his "police procedure" expert.

It is unclear the foundation for this expert's statement. After all, as Avery pled in his postconviction motion, his computer expert identified "128 searches for the most violent porn images" and that expert's affidavit reveals that none of these searches occurred on September 18, 2005. More importantly, September 18, 2005, was a Sunday, which is when multiple individuals had access to the communal computer. Assuming searches of some kind did occur on Sunday, September 18, 2005, Avery does not explain how these searches can be tied to Bobby. We will not consider this argument further.

[8] In his brief to this court, Avery contends that if Bobby's motive was not sexual, "[t]he motive for her murder may have been a theft by Bobby of her vehicle and the items within it." This was not pled in Avery's postconviction motion. It is also conclusory and speculative. We do not consider this argument further.

*Vollbrecht*, 344 Wis. 2d 69, ¶26 ("*Denny* requires that all three [motive, opportunity, and direct connection] be shown before evidence of a third-party perpetrator is admitted at trial."). However, in the interest of completeness, we will continue the analysis.

¶34 We next turn to the second prong of the "legitimate tendency" test—opportunity. Opportunity "asks whether the alleged third-party perpetrator *could have* committed the crime in question." *Wilson*, 362 Wis. 2d 193, ¶65. "The defense theory of a third party's involvement will guide the relevance analysis of opportunity evidence in a *Denny* case." *Id.*, ¶68. Sometimes, opportunity can be established by simply showing the third party was at the crime scene. *Id.*, ¶65. However, when the theory of how the third party committed the crime requires that person to have carried out a series of complicated and difficult tasks, it is not enough to show the third party's mere presence at the scene and an unaccounted-for period of time. *Id.*, ¶¶10, 65, 68, 81-85.

¶35 In his present motion, Avery alleged that Bobby killed Halbach on October 31, 2005,[9] and then framed him for it. Therefore, to establish opportunity in this case, Avery "must provide some evidence that [Bobby] had the realistic ability to engineer such a scenario." *See id.*, ¶90.

---

[9] In his brief to this court, Avery complains "the circuit court erroneously found that Ms. Halbach was murdered on October 31st but there is no proof of when Ms. Halbach was murdered up until her remains were found on November 7th." However, in his postconviction motion, Avery specifically alleged, "*On October 31, 2005* the obsessive fantasies of Bobby became a horrible reality when Teresa Halbach was brutally assaulted and murdered by two rifle shots to her skull." (Emphasis added.)

¶36    Avery contended that Sowinski's affidavit established Bobby was in possession of Halbach's vehicle and had the "opportunity/access to the items that were used 'in the frame-up.'" He stated:

> Bobby was in possession of the Halbach vehicle, which contained the crucial evidence of this terrible crime: Ms. Halbach's blood, key, electronic devices, and license plate (which was concealed in another salvage car) and Mr. Avery's carefully deposited blood on the seats and dash and DNA on the hood latch. By being in possession of the vehicle Bobby was able to control the direction of the investigation. He planted the vehicle on the Avery property after he deposited Mr. Avery's blood and DNA in it. He had Ms. Halbach's key and electronic devices which ended up in Mr. Avery's bedroom and burn barrel.

¶37    The Sowinski affidavit, however, only stated that Sowinski saw Bobby and another individual *pushing* a blue-colored RAV4 on November 5, 2005. Nothing in the Sowinski affidavit linked Bobby to *Halbach's* RAV4, its key or her electronics. Avery failed to offer anything other than speculation that Bobby possessed Halbach's RAV4, its key or her electronics.

¶38    Additionally, although Avery argued Bobby had access to his blood (Avery claimed Bobby knew Avery was bleeding one day and Avery left blood in his trailer's sink), Avery only offered conclusory statements and speculation that Bobby would be able to successfully collect and plant Avery's blood in a way that went undetected by crime scene professionals.

¶39    Avery also did not explain how Bobby had access to any of the other forensic evidence in this case. In his postconviction motion, Avery omitted any allegation that Bobby had access or the ability to collect and transfer his DNA,

17

which was found on Halbach's hood latch and her RAV4 key.[10]   Avery also omitted that police found a bullet inside Avery's garage that contained Halbach's DNA and the bullet was fired from a rifle that was found inside Avery's trailer.

¶40     The circuit court observed that, pursuant to *Wilson*, Avery's theory of Bobby's involvement required Avery to provide evidence that Bobby had the realistic ability to carry out the complicated plan that he alleged was used to frame him.  *See Wilson*, 362 Wis. 2d 193, ¶¶10, 65, 68, 81-85.  The court noted that Avery "speculates on many points as to how Bobby could have carried out the plan to frame [Avery], but the *Wilson* test requires more."  The court determined Avery

> failed to offer any evidence that Bobby had the scientific knowledge to recognize the significance of each piece of the forensic evidence supposedly planted by him, let alone establish that he had the skill to plant that evidence in a way that would stand up to scientific scrutiny by professional crime scene analysts.

The court concluded that "[a]ll of the allegations implicating Bobby in the murder and the framing of [Avery] are pure speculation and not supported by any evidence submitted by [Avery]." [11]  We agree with the circuit court.

---

[10] In his brief to this court, Avery states that he maintains law enforcement planted the touch DNA in this case.  However, in his postconviction motion, he alleged Bobby "deposited Mr. Avery's … DNA in [the vehicle]."

[11] In its analysis, the circuit court also observed that Avery's new defense theory that Bobby murdered Halbach and framed Avery for the crime failed to acknowledge Bobby's brother, Brendan Dassey.  The court observed that Brendan confessed to and was convicted of participating in Halbach's murder, that Brendan "specifically implicated [Avery] in this crime," and that Brendan's conviction was affirmed by the appellate courts.  *See State v. Dassey*, No. 2010AP3105-CR, unpublished slip op. (WI App Jan. 30, 2013); *see also Dassey v. Dittmann*, 877 F.3d 297, 300-01 (7th Cir. 2017).

(continued)

¶41　We conclude Bobby's mere presence on the Avery property and the Sowinski affidavit averring Bobby was pushing a RAV4 five days after Halbach's murder, does not establish any fact showing Bobby could have actually accomplished committing Halbach's murder and planting all of the evidence in this case. *See id.*, ¶65.　Nothing in the Sowinski affidavit establishes Bobby was in possession of the evidence that Avery asserts was used to frame him.　In short, Avery's postconviction motion fails to allege sufficient facts to support his theory that Bobby had opportunity—that he could have killed Halbach and framed Avery for it. *See id.*

¶42　We could again stop the analysis here. *See id.*, ¶64.　In his postconviction motion, Avery has already failed to sufficiently plead two prongs of the *Denny* test.　Once more, in the interest of completeness, we will continue the analysis.

¶43　The third prong of the "legitimate tendency" test is a "direct connection." *Wilson*, 362 Wis. 2d 193, ¶71.　Direct connection is assessed by considering "the proffered evidence in conjunction with all other evidence to determine whether, under the totality of the circumstances, the evidence suggests that a third-party perpetrator *actually committed* the crime" and takes the defendant's theory "beyond mere speculation." *Id.*, ¶¶59, 71.　"No bright lines can be drawn as to what constitutes a third party's direct connection to a crime," but it

On appeal, Avery argues the circuit court erred by referencing Brendan because "Brendan's confession was not introduced into Mr. Avery's trial, and it is wholly improper for the circuit court to have factored the alleged confession into its analysis."　We need not consider this argument because, even without Brendan's confession, Avery's postconviction motion still does not establish Bobby's "opportunity" under *Denny*. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases are decided on the narrowest possible grounds).

must be more than "a connection between the third party and the crime"; it requires "some direct connection between the third party and the *perpetration of* the crime." *Id.*, ¶71.

¶44   In his postconviction motion, Avery argued, "The Sowinski evidence demonstrates that Bobby could have committed the murder because he is in possession of Ms. Halbach's vehicle, where the murder likely occurred as evidenced by Ms. Halbach's blood in the vehicle. The vehicle is a key piece of evidence in the crime."

¶45   The circuit court disagreed. It stated:

> Assuming, for the purposes of this motion, that everything averred to in the Sowinski affidavit is true, the defendant is incorrect in his assertion that the facts in the affidavit provide a direct link between Bobby and the Halbach murder. The defendant asserts that, ipso facto, if Bobby was in possession of the victim's car that night, he must also have been the individual who committed the murder. No evidence submitted by the defendant supports this conclusion. Even if Bobby was found in the possession of the victim's automobile on the night of November 5, 2005, there is only speculation and no evidence to prove that Bobby was in possession of the car or that he had exclusive control over the vehicle prior to that night.

¶46   We agree with the circuit court. Sowinski's averments that he purportedly saw Bobby and someone else pushing a RAV4 on November 5—five days after Halbach's murder—do not provide a link between Bobby and perpetration of the murder, nor any factual link between Bobby and any of the forensic evidence. At most, Sowinski's affidavit establishes a *possible* "connection between the third party and the crime." *See **Wilson***, 362 Wis. 2d 193, ¶71. However, that is not enough. Avery's postconviction motion does not

sufficiently allege facts that demonstrate Bobby had a "direct connection" to murdering Halbach and framing Avery for it. *See **id.***

¶47     Because Avery's postconviction motion did not allege sufficient facts to satisfy the ***Denny*** requirements for third-party perpetrator evidence, the Sowinski evidence is not material and therefore does not satisfy the newly-discovered-evidence test. *See **Vollbrecht***, 344 Wis. 2d 69, ¶25.  We therefore do not determine whether the "evidence is not merely cumulative" (the fourth factor) or whether a reasonable probability exists that a different result would be reached at a new trial. *See **Edmunds***, 308 Wis. 2d 374, ¶13 (citation omitted).  Avery's motion is insufficiently pled.

¶48     We pause here to discuss the affidavit from Buresh.  As stated previously, after briefing on Avery's postconviction motion concluded, Avery filed an affidavit from Buresh.  Avery's postconviction counsel moved to amend a single paragraph in the postconviction motion so that the amended paragraph would read:

> 20. The Sowinski evidence provided by Mr. Sowinski to Mr. Avery's current postconviction counsel is newly discovered evidence, which provides the missing direct connection between Bobby and Ms. Halbach's murder making him a ***Denny*** suspect.  Mr. Thomas Buresh corroborates the previously filed affidavit of Thomas Sowinski that Bobby Dassey was driving the RAV4 vehicle of Teresa Halbach on Friday night, November 4th or early Saturday morning after her disappearance on October 31, 2005.

¶49     The circuit court analyzed Buresh's affidavit and determined nothing in Buresh's affidavit linked Bobby to Halbach's murder.

¶50     We conclude Avery's motion is insufficiently pled in regard to the Buresh affidavit.  Avery referenced Buresh one time in the entirety of his

postconviction motion. He did not offer any analysis or assertions within his motion as to how Buresh's affidavit met the four criteria of newly-discovered evidence or established a reasonable probability that a different result would be reached at trial. *See Edmunds*, 308 Wis. 2d 374, ¶13 (citation omitted). Avery did not sufficiently plead the Buresh affidavit as newly-discovered evidence. In any event, we agree with the circuit court that Buresh's affidavit does not link Bobby to Halbach's murder.

¶51 Finally, Avery argues the circuit court made a variety of factual errors in its written decision that are unsupported by the Record. We have already addressed some of these purported errors. Other examples include that the court referred to Bobby as Brian at one point in its decision; stated Brendan was forensically linked to the crime; stated Halbach's bones were found in Avery's burn barrel (her electronics were found there, her bones were found in multiple locations including Avery's burn pit); and stated "bone fragments from almost every bone in the human body" were found in the burn pit (this statement, however, was proven at trial by the forensic anthropologist who found at least one fragment from nearly every bone in the human body within the burn pit). We have reviewed the purported errors and conclude they have no bearing on the circuit court's denial of Avery's postconviction motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.